IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA DEL C. VILLALONGO GORDILLO,<br><br>Plaintiffs,<br><br>v.<br><br>CENTENNIAL DE PUERTO RICO/AT&T MOBILITY, INC.,<br><br>Defendants. | Civil No.:11-1115 (DRD) |

### OPINION AND ORDER

Plaintiff Maria del C. Villalongo Gordillo brings the suit against her employer, Centennial de Puerto Rico/AT&T Mobility, Inc., ("Defendants") under Title VII of the Civil Rights Act of 1964 and of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981 et seq., respectively.

Plaintiff alleges sexual discrimination as well as retaliation for filing an administrative charge with the Equal Employment Opportunity Commission ("EEOC") and the Anti-Discrimination Unit of the Puerto Rico Department of Labor ("ADU"). Plaintiff further advances a cause of action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Plaintiff additionally adds claims arising under the laws of Puerto Rico, which are attached to the instant matter via the exercise of the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### I.   FACTUAL AND PROCEDURAL HISTORY

In August of 2002, Plaintiff started working for Defendants as an outside sales representative. In 2007, Plaintiff was promoted

to a Business Account Executive. Thereafter, her supervisors allegedly began to sexually harass and discriminate against Plaintiff on account of her sex. Her supervisors, *inter alia*, directed derogatory comments towards Plaintiff, made sexually charged comments regarding her body, and extended propositions to have sexual relations. Plaintiff reported the alleged conduct to Defendant's human resources department.

Thereafter, Plaintiff averred that her supervisors told Plaintiff that her working conditions would be negatively affected if Plaintiff did not have sexual intercourse with them. Plaintiff avers that her supervisors also took away major accounts that were assigned to her and reassigned them to other male co-workers with less experience than Plaintiff. Plaintiff further claims that her supervisors began to exclude Plaintiff from participating in sales meetings as well as participating in meetings with her clients. Plaintiff proceeded to make a second complaint with Defendants' human resources department. No investigation or corrective action ensued.

On September 24, 2009, Plaintiff filed a charge with the EEOC and the ADU alleging sexual discrimination under Title VII. After filing the administrative complaint, Plaintiff's supervisors did not assign any new clients or accounts to Plaintiff, and continued to reassign Plaintiff's largest accounts to other male co-workers with less experience.

On August 26, 2010, Plaintiff amended her EEOC charge and ADU

charge to include a retaliation claim. Plaintiff subsequently requested the closing of her administrative charge in order to expedite a Right to Sue Letter.

Plaintiff alleged that her work environment was hostile, which negatively affected her emotional and mental state, and caused her to suffer from severe major depression. Plaintiff avers that she requested reasonable accommodations and short term benefits, which were denied.

On February 1, 2011, Plaintiff timely commenced the instant suit (Docket No. 1), which, *inter alia*, includes a cause of action under the ADA. On June 10, 2011, the Court held an Initial Scheduling Conference (Docket No. 14) where the Court directed both parties to file briefs relating to Plaintiff's failure to exhaust administrative remedies related to her ADA claim in lieu of the limited exception established in Clockedile v. New Hampshire Dept. of Corrections, 245 F.3d 1 (1st Cir. 2001).[1]

On July 27, 2011, Defendants filed a motion to dismiss Plaintiff's ADA claim (Docket No. 16). Therein, Defendants argue that Plaintiff failed to file an administrative charge for discrimination based on disability, and, therefore, this Court is barred from considering Plaintiff's ADA claim. Defendants also advance that the exception the First Circuit Court of Appeals announced in *Clockedile* is not applicable as the exception is limited to retaliation claims emanating from the same type of

---

[1] The Court hereby **NOTES** Defendants' motion in compliance with this Court directive (Docket No. 16).

behavior alleged at the administrative level (Docket No. 16).

On August 8, 2011, Plaintiff opposed Defendants' motion (Docket No. 18). Plaintiff states that she did not become disabled until after she requested the closing of her EEOC charge. Plaintiff further avers that Defendants' denial of her reasonable accommodation requests and denial of payment of short term disability benefits did not also occur until after she requested the closing of her administrative charge. Plaintiff argues that these actions, the denial of her reasonable accommodation requests and short term disability benefits, were in retaliation for her EEOC and ADU sexual harassment and sexual discrimination claim. Therefore, Plaintiff advances that under the *Clockedile* exception, Plaintiff's failure to file an administrative charge for disability discrimination does not preclude Plaintiff from bringing a claim under the ADA.

Plaintiff additionally argues that the "scope of an employment discrimination action is not strictly limited to those incidents described in the administrative complaint." Id. (quoting Sinia v. Verizon New England, Inc., 76 Fed. Appx. 338, 341 (1st Cir. 2003). Plaintiff also posits that if the Court were to construe the scope of her complaint in district court so narrowly as to bar her ADA claim, the Court would be binding Plaintiff to her administrative charge, which was prepared and filed without the benefit of legal counsel.

## II.   MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See* Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).')(quoting Twombly, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [her] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; *see e.g.* Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by Twombly, 550 U.S. 544, and Iqbal, 129 S. Ct. 1937. "Context based" means that a Plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See* Iqbal, 129 S. Ct. at 1949-1950 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving

the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. Iqbal, 129 S. Ct. at 1940. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949) (quoting Twombly, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." Iqbal, 129 S.Ct. at 1950. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. Id.

Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at

-6-

1950(quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." Id. at 1950-51 (citing Twombly, 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez, 640 F.3d at 12, (citing Iqbal, 129 S.Ct. at 1950).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010) (citing Twombly, 550 U.S. at 556); Ocasio-Hernandez, 640 F.3d at 12 (citing Iqbal, 129 S.Ct. at 1950); *see* Twombly, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.")(internal quotation marks omitted); *see* Ocasio-Hernandez, 640 F.3d at 12 (citing Twombly, 550 U.S. at 556)("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Sepúlveda-Villarini, 628 F.3d at 29. Parroting the elements of a cause of action falls outside the required threshold. Iqbal, 129

S.Ct. at 1949.

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996); *see also* Sánchez v. U.S., 2012 WL 447164 at *9 (quoting Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R., 394 F.3d 40, 44 (1st Cir. 2005)). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; *see* Iqbal, 129 S.Ct. at 1951 ("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . . It is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see* Mendez Internet Mgmt. Servs. v. Banco Santander de P.R., 621 F.3d 10, 14 (1st Cir. 2010) (The Twombly and Iqbal standards require District Courts to "screen[] out rhetoric masquerading as litigation.").

### III. LEGAL ANALYSIS

The ADA mandates compliance with the administrative procedures as set out in Section 2000e-5(e)(1) of Title VII.[2] Bonilla v.

---

[2] Section 12117 of the ADA incorporates the same powers, remedies, and procedure that are set out in sections 2000e-4, 2000e-5, 2000e-6, 2000-e8, and 2000e-9 of Title VII.

Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999). Section 2000e-5(e)(1) states that an aggrieved employee alleging discrimination shall file an administrative claim within "'one hundred and eighty days after the alleged unlawful employment practice occurred,' or within 300 days if 'the person aggrieved person has initially instituted proceedings with [an authorized] State or local agency.'" Bonilla, 194 F.3d at 278. Courts have long recognized that exhaustion of administrative remedies of an ADA cause of action is a prerequisite to the commencement of suit in district court. Bonilla, 194 F.3d at 278; Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 1123 (1982)(exhaustion of administrative remedies is a prerequisite to filing a Title VII suit in district court); Davidson v. America Online, Inc., 337 F.3d 1179, 1183 (10th Cir. 2003); Dao v. Auchan Hypermarket, 96 F.3d 787, 788-89 (5th Cir. 1996).

The purpose of the exhaustion of administrative remedies requirement is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996). If an employee were to be "permitted to allege one thing in the administrative charge and later allege something entirely different in a subsequent civil action," the primary aim of requiring exhaustion of administrative remedies, informal conciliation of discriminatory practices, would be entirely frustrated. Id.

One exception to this general rule is the so-called reasonably

related retaliatory claims test.[3] Claims of retaliation for filing an EEOC charge are "preserved so long as they are reasonably related to, or grow out of, the conduct complained of at the administrative level–e.g., the retaliation is for filing the agency complaint itself." Clockedile, 245 F.3d at 6.[4] Thus, the failure to file an EEOC charge for retaliatory activities does not preclude district court from considering a plaintiff's retaliation claim. The exception is designed to minimize the danger of mouse-trapping complainants, who often file their administrative complaint without the benefit of legal counsel. Clockedile, 245 F.3d at 4.

The First Circuit expressly cautioned that the *Clockedile* exception does not apply to a "claim based on additional acts of discrimination or alternative theories that were never presented to the agency." Clockedile, 245 F.3d at 6. District courts applying *Clockedile* have considered retaliation claims to be preserved under the reasonably related retaliatory claims test when the retaliation claims are brought under the same legislative act as the administrative charge. *See* Ara v. Tedeschi Food Shops, Inc., 794 F.Supp.2d 259 (D.Mass 2011); Montalvo-Padilla v. University of P.R., 498 F.Supp.2d 464 (D.P.R. 2007); Sanchez Ramos v. Puerto Rico Police Dept., 392 F.Supp.2d 167 (D.P.R. 2005); Acevedo

---

[3] The parties do not argue that the scope of the investigation rule, another exception to the general rule, applies in the instant matter. Therefore, the Court will not address this additional exception herein.

[4] Other circuits have established a similar *Clockedile* exception. *See* Malarkey v. Texaco, Inc., 983 F.2d 1204, 1208-1209 (2d Cir. 1993); Scott v. University of Mississippi, 148 F.3d 493, 514 (5th Cir. 1998); Wedow v. City of Kansas City, 442 F.3d 661, 673-674 (8th Cir. 2006).

Martinez v. Coatings, Inc. and Co., 286 F.Supp.2d 107 (D.P.R. 2003).

In the present controversy, Plaintiff first filed a charge with the EEOC and the ADU alleging Title VII sexual harassment. Plaintiff then amended her charge to report subsequent retaliatory conduct related to the previously reported sex discrimination. Plaintiff proceeded to file a suit in district court alleging a Title VII claim, a retaliation claim for filing her EEOC charge in regard to sex discrimination, and an ADA claim. Plaintiff clearly exhausted the proper administrative remedies with respect to her Title VII and retaliation claims on the basis of sex. Thus, these two claims are not at issue. Defendants only challenge the exhaustion of administrative remedies for Plaintiff's ADA claim.

While Plaintiff concedes that she did not exhaust the administrative remedies for her ADA claim, Plaintiff argues that her ADA claim is proper under *Clockedile* because her ADA claim is reasonably related to, and grows out of, the conduct which gave rise to her Title VII claim. The Court finds that Plaintiff interprets *Clockedile* too broadly and as such a reading of the *Clockedile* holding would greatly frustrate the public policy underlying the exhaustion requirement.

"Congress created the EEOC and established a procedure whereby . . . state and local [administrative] agencies, as well as the [EEOC], would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party

was permitted to file a lawsuit." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974). Congress intended judicial review to be "limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 1999)(internal quotations and citations ommitted). The exhaustion of administrative remedies prerequisite is "an essential part of [Congress'] statutory plan." Id. Without the prerequisite, the parties would most likely forego the opportunity "to resolve their disputes by relatively informal means far less costly and time consuming than litigation." Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 525, 97 S.Ct. 1932, 52 L. Ed. 2d 532 (1977); *see* Patterson v. McLean Credit Union, 491 U.S. 164, 180-181 (1989)(the EEOC is designed to "assist in the investigation of claims of discrimination . . . and to work towards the resolution of these claims through conciliation rather than litigation."); Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996)("The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court."); Redmon v. Sud-Chemie Inc. Ret. Plan for Union Emples., 547 F.3d 531, 539-540 (6th Cir. 2008)("Exhaustion furthers the important public policy of encouraging private rather than judicial resolution of disputes."). Plaintiff's interpretation of *Clockedile* would result in Plaintiff "thwarting [] the administrative process and peremptorily substituting litigation for

conciliation." McClain v. Lufkin Indus., Inc., 519 F.3d 264, 273 (5th Cir. 2008).

Plaintiff claims that her ADA claim should be preserved under *Clockedile* because the denial of reasonable accommodations and denial of short term benefits occurred as retaliation. However, Plaintiff brings her retaliation claim under the ADA, an entirely different legislative act than Title VII. Therefore, *Clockedile*, and its progeny, are inapplicable to Plaintiff's ADA claim. In order for the district court to properly entertain her ADA claim, Plaintiff was required to first exhaust the proper administrative remedies by filing a charge with the EEOC or ADU alleging disability discrimination. Thus, Plaintiff should have filed a second EEOC charge for her disability claim.

As Plaintiff's administrative charges do not allege discrimination based on disability, Plaintiff has not exhausted the appropriate administrative remedies for her ADA claim. Such an omission to timely file a complaint with the EEOC "effectively bars the courthouse doors." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). Hence, Plaintiff will not be able to pursue her purported ADA claim.

At the motion to dismiss stage, Plaintiff's allegations that she became disabled, and was allegedly discriminated against based on her alleged disability after the closing of her EEOC charge, are entitled to a presumption of truth. Ocasio-Hernandez, 640 F.3d at 10. Although Defendants deny this assertion and claim that

-13-

Plaintiff knew she was disabled and had knowledge of the acts of discrimination supposedly based on her disability at an earlier point, this discrepancy will ultimately be resolved at the summary judgment phase as "we must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" at the motion to dismiss phase. Sánchez, 2012 WL 447164 at *5.[5] Accordingly, we reserve judgment on whether she has a cause of action based on the fact that Defendants knew of her disability and retaliated against her as to gender through her alleged incapacity.

### IV. CONCLUSION

As the Court finds that the *Clockedile* exception does not apply to Plaintiff's ADA claim because she brings her ADA claim under a different legislative act than she alleged in her administrative charge, the Court is precluded from considering Plaintiff's ADA cause of action. Accordingly, the Court hereby **GRANTS** Defendants' motion to dismiss (Docket No. 16) and **DISMISSES** Plaintiffs' ADA cause of action **WITH PREJUDICE.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of February of 2012.

/s/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ
U.S. District Judge

---

[5] Although the First Circuit was analyzing a Rule 12(b)(1) motion in Sánchez and the present inquiry is under Rule 12(b)(6), "[t]he same standard applies to both subsections." Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 45 n.3 (1st Cir. 2011).